# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: July 31, 2023

```
* * * * * * * * * * * * * * * * * * * * * * * *
TIFFANY HALE,                      *       No. 19-1502V
                                   *
              Petitioner,          *       Special Master Sanders
v.                                 *
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
              Respondent.          *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Brian L. Cinelli*, Schiffmacher Cinelli Adoff LLP, Buffalo, NY, for Petitioner.
*Lauren Kells*, United States Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On September 30, 2019, Tiffany Hale ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. § 300aa-10 et seq. (2012); Pet. at 1, ECF No. 1. Petitioner alleged that she suffers from chronic fatigue syndrome ("CFS")[3] and/or complex regional pain syndrome ("CRPS")[4] as a result of an influenza ("flu")

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Chronic fatigue syndrome is persistent debilitating fatigue lasting longer than [six] months, with other known medical conditions having been ruled out by clinical diagnosis, accompanied by at least four of the following: significantly impaired short-term memory or concentration, muscle weakness, pain in multiple joints without swelling or redness, sore throat, tender lymph nodes, headaches, unrefreshing sleep, and malaise that lasts more than 24 hours following exertion." *Dorland's Illustrated Medical Dictionary* 1795 (33rd ed. 2020) [hereinafter "*Dorland's*"].

[4] Complex regional pain syndrome, also known as reflex sympathetic dystrophy, "a chronic pain syndrome of uncertain pathogenesis, usually affecting an extremity, and characterized by intense burning pain, changes in skin color and texture, increased skin temperature and sensitivity, sweating, and edema." *Dorland's* at 1795.

vaccine administered on September 29, 2016. *Id.* Following the dismissal of this case, Petitioner filed a motion for final attorneys' fees and costs. Pet'r's Mot., ECF No. 36. For the reasons discussed herein, Petitioner's motion is hereby **GRANTED**.

## I. Procedural History

Following the filing of her petition, Petitioner filed a notice of intent to file on compact disc on September 30, 2019, that was received by the clerk's office on October 28, 2019. ECF No. 6. The compact disc contained Petitioner's affidavit, medical records, an employer termination letter, medical literature, and VAERS reports. *See* Pet'r's Exs. 1–24. Petitioner filed supplemental medical records and a statement of completion on November 15, 2019. Pet'r's Exs. 25–26; ECF No. 10; ECF No. 11. Respondent filed his Rule 4(c) Report on September 17, 2020. Resp't's Report, ECF No. 23. Respondent asserted that as "a threshold matter," Petitioner had "fail[ed] to provide preponderant proof that [she] has been diagnosed with CFS or CRPS." *Id.* at 10. On April 16, 2021, I issued an order for Petitioner to "file a report from one of Petitioner's medical providers or an expert that confirms Petitioner's diagnoses[.]" Order at 1, ECF No. 24. Petitioner filed supplemental medical records, a copy of her originally filed affidavit with a previously missing page included, an expert medical report from Dr. Eric Tallarico, Dr. Tallarico's curriculum vitae, and supplemental medical literature. Pet'r's Exs. 27–28-4, ECF No. 26.

On August 21, 2021, I held a status conference with the parties to discuss "various issues with Petitioner's case moving forward." Order at 1, ECF No. 27. Petitioner's medical records did not include a CFS diagnosis, and "Dr. Tallarico did not address whether Petitioner suffers from CFS." *Id.* Based on the lack of evidence of a CFS injury in the record, "I indicated that I would not allow Petitioner to continue with a claim that she suffers from CFS." *Id.* Further, I noted that Petitioner's "medical records indicate Petitioner had preexisting symptoms that could be indicative of or overlap with CRPS." *Id.* at 1–2. I ordered Petitioner to file a supplemental expert report that provided context for alternative causes of Petitioner's symptoms identified in medical records, examples in the medical records to establish Petitioner experienced some immune response post vaccination, and "a biological mechanism linking the flu vaccination and CRPS." *See id.* Petitioner filed a status report on December 9, 2021, and stated that she "ha[d] been unable to find an expert that would support causation in the action." ECF No. 29 at 1. Shortly thereafter, on January 24, 2022, Petitioner expressed her intention to file a motion to dismiss. Informal Comm., docketed Jan. 25, 2022. Petitioner filed her motion on February 8, 2022. ECF No. 30. I granted Petitioner's motion and dismissed her petition on March 25, 2022. Decision, ECF No. 31.

Petitioner filed a motion for attorneys' fees and costs on September 14, 2022. Pet'r's Mot., ECF No. 36. Respondent filed a response on October 19, 2022, opposing the award of fees and costs on the grounds that the claim lacked a reasonable basis at the time it was filed. Resp't's Resp. at 13–18, ECF No. 38. Petitioner filed a reply on November 16, 2022. Pet'r's Reply, ECF No. 41.

After consideration of the entire record, pursuant to the Federal Circuit's guidance on what constitutes objective evidence of causation, I find that Petitioner's claim had reasonable basis and accordingly **GRANT** her motion for attorneys' fees and costs.

## II. Parties' Arguments – Attorneys' Fees and Costs

### A. Petitioner's Motion

Along with her motion for attorneys' fees and costs, Petitioner filed an affidavit from her counsel stating that "the issue of reasonable basis has not been raised to this point, [but] since it is [counsel's] understanding that [R]espondent reserved the right to raise reasonable basis in the future," Petitioner included arguments in favor of an award. Aff. ¶ 14, ECF No. 36-1. In support of reasonable basis, Petitioner noted fourteen cases that have successfully alleged CRPS as a result of the flu vaccine. *Id.* ¶ 20; *see, e.g.*, *Garcia v. Sec'y of Health & Hum. Servs.*, No. 18-1688V, 2020 WL 6285315 (Fed. Cl. Spec. Mstr. Sept. 24, 2020); *Tucker-Corley v. Sec'y of Health & Hum. Servs.*, No. 20-1797V, 2022 WL 3590270 (Fed. Cl. Spec. Mstr. July 22, 2022). She also noted "numerous VAERS reports filed alleging subsequent development of [CRPS], and related conditions after receiving vaccinations." *Id.* ¶ 21. According to Petitioner, the record includes "several articles [submitted] with the petition supportive of a potential causal connection between vaccination and the development of CRPS." *Id.* ¶ 22. Although Petitioner was not formally diagnosed with CRPS or CFS, she argued that "it is significant that [she] had undergone a litany of testing and imaging studies, all of which failed to provide an alternative diagnosis or basis for why she suddenly developed such symptoms." *Id.* ¶ 24. Petitioner also filed a report from a medical expert "who both confirmed the diagnosis of CRPS in this instance, and also causally related the subject vaccination to [P]etitioner's development of CRPS." *Id.* ¶ 23. Dr. Tallarico cited Petitioner's medical record to identify symptoms that he opined are consistent with CRPS. *Id.* ¶¶ 27–28. Petitioner also cited "some of [her] treating physicians[, who] repeatedly raise[d] the issue of [CRPS/ reflex sympathetic dystrophy ("RSD")][5] as a potential diagnosis . . . ." *Id.* ¶ 30. In total, Petitioner argued that the record contains some objective evidence to support causation. *Id.* ¶ 33. Petitioner finally noted that she "expeditiously agreed to discontinue this action as soon as it became apparent that she was unable to locate an additional expert to address the specific issues requested by the Court." *Id.* ¶ 34.

### B. Respondent's Response

Respondent opposed Petitioner's request for attorneys' fees and costs, first by noting that Petitioner's "medical records fail to substantiate a diagnosis of either CRPS or CFS." Resp't's Resp. at 13. Respondent continued, "[P]etitioner's symptoms remained largely subjective, with normal objective testing throughout." *Id.* at 14. Dr. Tallarico's diagnosis, Respondent argued, "appears largely speculative, given the myriad [sic] treating providers that made no such diagnosis." *Id.* Respondent noted that Petitioner's physical therapist discussed CRPS, but Respondent discounted this because a physical therapist is not a medical doctor. *Id.* at 14 n.7. Respondent noted that "one treater, her rheumatologist, [ ] specifically indicated that she doubted the flu vaccine was related to [Petitioner's] current symptoms." *Id.* at 15 (internal quotation marks, alterations, and citations omitted). Respondent contended that Petitioner filed no supporting literature that supports Dr. Tallarico's identified CRPS symptoms, and the literature that Petitioner did file "relates to the HPV vaccine, which is not at issue in this case." *Id.* at 14–15.

Secondly, Respondent argued that Petitioner's expert "fail[ed] to provide adequate evidence of a causal relationship between the flu vaccine and [P]etitioner's alleged injuries to

---

[5] RSD is another name for CRPS. *Dorland's* at 1795.

satisfy the reasonable basis standard." *Id.* at 15. Most importantly, the temporal relationship is not appropriate because Petitioner's symptoms predated her vaccination. *Id.* Respondent concluded "the record [ ] lacks any objective evidence that [P]etitioner's vaccination caused her alleged injuries." *Id.* at 16.

### III.    Applicable Legal Standards

Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good faith. *See, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.,* 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied.[6] *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner,* 2007 WL 4410030, at *6–7. Instead, the claim must at least be supported by objective evidence – medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). In *Cottingham*, the Federal Circuit further "explained that the quantum of objective evidence needed to establish reasonable basis for a claim, including causation, is 'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379 (Fed. Cir. 2021) (quoting *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020)).

The Federal Circuit has made a determination of law regarding what constitutes "objective" evidence in the context of a reasonable basis analysis. Indeed, it found that multiple pieces of evidence, perhaps not sufficient alone, when taken together, can amount to more than a mere scintilla. *See id.* at 1379–81. Furthermore, the Federal Circuit explained that "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Cottingham*, 971 F.3d at 1346.

In addition to medical evidence, petitioners' affidavits and statements can also provide objective evidence to be used in making a reasonable basis determination. *See James-Cornelius,* 984 F.3d at 1380–81. It is well understood that petitioners' "lay opinions as to causation or medical diagnosis may be properly categorized as mere 'subjective belief' when the witness is not competent to testify on those subjects[.]" *Id.* at 1380. *Cottingham* and *James-Cornelius* make it clear, however, that the receipt of a vaccine and the timing and severity of symptoms are facts that may be best received from the person with that experience. In *James-Cornelius,* the Federal Circuit

---

[6] Respondent has not contested good faith in this case. It is not at issue.

4

explained that "the patient's or a parent's testimony may be the best, or only, direct evidence of" medical symptoms or events. *Id.* Ultimately, "[w]hen taken together with the corroborating medical records [and other filings, the petition and affidavits] amount to relevant objective evidence for supporting causation[]" in the context of reasonable basis. *Id.* at 1381.

While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

## IV.     Reasonable Basis Analysis

Petitioner ultimately filed a motion to dismiss her claim in this case, noting that she would be "unable to prove entitlement to compensation in the Vaccine Program." ECF No. 30 at 1. However, as previously noted, whether a petitioner can establish entitlement to compensation is not the standard for establishing reasonable basis. Petitioner contends that she has presented sufficient evidence for reasonable basis in the form of medical records, medical literature, VAERS reports, and an expert report. For the reasons discussed in more detail below, I agree with Petitioner. Analogous to the factors considered by the Federal Circuit, Petitioner's evidence constitutes objective evidence of causation and establishes a reasonable basis for her claim.

### A.  Diagnosis

Respondent's primary argument against Petitioner's motion for fees and costs is based on the lack of a formal diagnosis. Respondent is correct that Petitioner was not formally diagnosed with CRPS or CFS[7] by any of her treaters; however, her medical records include "examination reports detailing [Petitioner's] medical history that address injuries she suffered[]" and lend themselves to an analysis of diagnosis. *Cottingham*, 971 F.3d at 1346 (finding that, along with additional evidence, medical records detailing injuries a petitioner suffered "can constitute evidence of causation supporting a reasonable basis[]"). Petitioner's pre-vaccination medical history includes dizziness, fatigue, and body aches related to various flu, ear, and urinary tract infections. *See generally* Pet'r's Ex. 3 at 1–36. Beginning ten weeks post vaccination on December 8, 2016, Petitioner sought treatment at the Heartland Regional Medical Center ("HRMC") for pain and tingling in her extremities. Pet'r's Ex. 5 at 2. Petitioner also complained of numbness and tingling to her primary care provider ("PCP") on December 12, 2016. Pet'r's Ex. 3 at 42. The next day, on December 13, 2016, Petitioner returned to HRMC complaining of numbness and tingling all over, as well as neck and back pain, facial numbness, confusion, and difficulty swallowing. Pet'r's Ex. 5 at 17, 21. On December 25, 2016, Petitioner presented to HRMC with complaints of left-sided numbness, nausea, and vomiting. *Id.* at 49. Petitioner presented to Southern Illinois Hospital on December 28, 2016, with complaints of headaches, left-sided numbness, and blurred vision since December 6, 2016. Pet'r's Ex. 7 at 29. On January 10, 2017, Petitioner saw her PCP again and reported back pain, urinary incontinence, leg and arm weakness, left-sided face

---

[7] Petitioner did not continue to pursue her claim that her vaccination caused CFS after the August 24, 2021 status conference. *See* Order at 1, ECF No. 27.

5

numbness, and that she could feel temperature changes on her chest and face. Pet'r's Ex. 3 at 53. Later that same day, Petitioner presented to HRMC with complaints of left-sided numbness and neck pain. Pet'r's Ex. 5 at 61. She reported that she had paresthesias in her left upper extremity and on the left side of her face. *Id.* On January 16, 2017, Petitioner presented to a neurologist with complaints of headaches, fatigue, and weakness for three months following a flu shot. Pet'r's Ex. 11 at 1. On exam, she had give-way weakness and "mild 'twisting' of [the] left face, suggestive of functional symptomatology." *Id.* at 3. The neurologist's assessment included weakness "following the flu shot" and migraines. *Id.* at 4.

Petitioner's treaters noted CRPS as a potential explanation for her symptoms. A January 26, 2017 daily note from the Rehabilitation Institute of Chicago included the assessment that "CRPS might be developing in the [left] arm and does not respond to neck manual and nerve glides." Pet'r's Ex. 8 at 28. Despite this assessment, Respondent noted that it was "Petitioner's physical therapist, who is a not a medical doctor[]" who discussed CRPS. Resp't's Resp. at 14 n.7. Respondent is correct that experience and expertise of the medical providers is relevant when "weighing competing treating physicians' conclusions against each other." *See id.* (citing *Hibbard v. Sec'y of Health & Hum. Servs.*, 100 Fed. Cl. 742, 749 (2011)). Providers' medical opinions are often the determining factors in entitlement decisions. However, in assessing reasonable basis, a determination of the weight of the evidence is not the same as a determination that the evidence is objective. Under the *Cottingham* standard, a physical therapist's opinion would qualify as a scintilla of objective evidence to be considered in the aggregate.

Petitioner was ultimately diagnosed with CRPS by her expert, Dr. Tallarico. Dr. Tallarico is a "[b]oard[-c]ertified [p]hysiatrist with additional training and [b]oard [c]ertification in pain medicine." Pet'r's Ex. 28 at 1, ECF No. 26-2. He has "routinely evaluated, diagnosed[,] and treated numerous individuals who have been diagnosed with [CRPS.]" *Id.* In his expert report, Dr. Tallarico referred to many of the symptoms described by Petitioner and observed by her treaters, including left arm pain, burning sensations, weakness, and fatigue. *Id.* at 2–3. Based on his review of the medical records and these symptoms, Dr. Tallarico opined that Petitioner suffered from "CRPS or CRPS[-]like symptoms in her left extremity." *Id.* at 4.

More so, Petitioner's medical record reflects that she was seen at Saint Francis Medical Center on March 2, 2017, with complaints of "severe burning and pain in the left arm nearly [six] months after receiving a flu shot." Pet'r's Ex. 12 at 3. The provider began treating Petitioner for RSD with nortriptyline, a tricyclic antidepressant, and tested her for small fiber neuropathy. *Id.* Petitioner's extensive testing did "not reveal[ a] specific etiology[,]" but her treater noted the possibility of "a small fiber neuropathy although [testing] was negative." *Id.* at 5. Respondent focused on Petitioner's normal test results, but the fact remains that Petitioner received treatment consistent with RSD, also known as CRPS. This regimen suggests that her treater did not rule that diagnosis out. The symptoms documented in the medical record, the medical assessments that contemplate RSD and/or CRPS, and Dr. Tallarico's expert opinion based on Petitioner's presentation amount to objective evidence that support a diagnosis consistent with Petitioner's claim, and thus a reasonable basis.

**B. Causation**

Respondent further asserted in his opposition to Petitioner's motion that "the record [ ] lacks any objective evidence that [P]etitioner's vaccination caused her alleged injuries." Resp't's Resp. at 16. While Petitioner ultimately conceded that she was "unable to prove entitlement to compensation," the Circuit in *Cottingham* cautioned against conflating the burden of proof to establish reasonable basis for attorneys' fees with the preponderant evidence standard required to prove entitlement to compensation. *See* 971 F.3d at 1346. The lack of sufficient evidence for entitlement is not the same as the finding of the lack *of any* objective evidence to support the reasonable basis of a claim.

Petitioner noted that there have been previous cases in the Program that have successfully alleged CRPS as the result of receiving the flu vaccine. Aff. ¶ 20. It should be noted that the outcomes of other cases are not evidence of reasonable basis in this case. However, as Petitioner did, petitioners are likely to look for evidence that claims with similar vaccines and injuries have been successful in determining the potential viability of their own claim. In a similar argument, Petitioner noted that "there have been numerous VAERS reports filed alleging subsequent development of [CRPS] and related conditions after receiving vaccinations." Aff. ¶ 21. In *James-Cornelius*, the Federal Circuit considered a "VAERS?" notation in a medical record and found that it suggested a medical provider believed that a vaccine could have caused the petitioner's symptoms. 984 F.3d at 1380. There is no such notation in this case, but the VAERS reports Petitioner filed from other patients could be objective evidence that medical providers have considered vaccine-caused CRPS under certain circumstances.

Lastly, Petitioner filed an expert report with accompanying medical literature in support of her claim. Respondent does not argue that Petitioner's expert report is not objective. Instead, he described Dr. Tallarico's opinions as "entirely speculative, confusing, and unpersuasive." Resp't's Resp. at 15–16. Dr. Tallarico did not provide a causation theory, and it is clear from the scope of his report that his aim, in compliance with my April 16, 2021 Order, was to "confirm Petitioner's diagnoses[.]" Order at 1, ECF No. 24. Dr. Tallarico, who is a medical doctor with experience treating CRPS patients, provided such a report. At that point, Petitioner was still faced with procuring an expert to address the *Althen* prongs. She was unable to do so, and she consequently dismissed her case. In *James-Cornelius*, the Federal Circuit noted that the "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." 984 F.3d at 1379. It does not automatically flow from that reasoning that in every instance where a petitioner is unable to obtain such an expert, the case never had a reasonable basis.

Respondent further argued that "Dr. Tallarico provides no additional explanation and no citations to literature in support of his theories . . . ." Resp't's Resp. at 15. I agree with Respondent that Petitioner's submitted literature does not provide support for a reasonable basis for her claim. Petitioner initially provided some literature focused on CFS, which Dr. Tallarico did not address. *See* Pet'r's Exs. 16–17, 21. Petitioner also filed literature that discussed potential adverse effects of the HPV vaccine, which is not at issue in this case. *See* Pet'r's Exs. 18–20. Petitioner's filed medical literature does not provide relevant objective evidence in this case. Furthermore, I fail to see how the medical literature filed supports a causal link between the flu vaccine and CRPS without further explanation from Petitioner's expert. Indeed, the filings do not support Dr.

Tallarico's expert report without incorporation into his opinion. While his report would be less persuasive under the preponderant standard without supporting literature, his use of examples from Petitioner's medical records lends support for a reasonable basis. Thus, his report is incorrectly characterized by Respondent as entirely speculative. Dr. Tallarico's opinion, in an area within his area of education and expertise, is objective evidence in support of Petitioner's claim to be considered in the aggregate for a reasonable basis determination.

Finally, although Petitioner did not rely on her statements made in her affidavit as evidence in support of reasonable basis, the Federal Circuit has determined that the affidavit testimony of petitioners, "separate and apart from any subjective beliefs[,]" may "support[ a] claim for compensation." *James-Cornelius*, 984 F.3d at 1381. In her affidavit, Petitioner stated that she began experiencing "extreme fatigue" approximately one week after her vaccination before also developing headaches and pain, numbness, and burning in her arm by December 8, 2016. Pet'r's Ex. 1 ¶¶ 4, 7–9. Petitioner's statements in this case describing "the receipt of a vaccine and the timing and severity of symptoms," like in *James-Cornelius,* when taken together with other evidence, must be considered as objective evidence for a reasonable basis analysis. *See id.* In *Cottingham*, the Circuit reiterated the Program's purpose to "award compensation to vaccine-injured persons quickly, easily, and with certainty, and generosity[]" while "assist[ing] a petitioner's ability to obtain qualified assistance by making fees awards available for non-prevailing, good-faith claims." 971 F.3d at 1343 (internal quotation marks and citations omitted). Good faith is undisputed in this case, and Petitioner has filed objective evidence to support her claim in the form of medical records, VAERS reports, an expert report, and personal testimony. Based on the totality of the record in accordance with the Federal Circuit's guidance in *Cottingham* and *James-Cornelius*, I find that Petitioner's claim had a reasonable basis through the pendency of her case, and she is therefore entitled to attorneys' fees and costs.

## V.     Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners in the Program bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A. Hourly Rate

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, 2021, 2022, and 2023 can be accessed online.[8]

Petitioner requests an hourly rate of $300.00 for the work of her counsel, Mr. Brian Cinelli, for all work performed between 2017 and 2022. Pet'r's Ex. 2 at 1–12, ECF No. 36-3. Petitioner also requested an hourly rate of $110.00 for the work of Mr. Cinelli's paralegals for all work performed between 2017 and 2022. *See id.* The requested rates are consistent with what Mr. Cinelli and his paralegals have previously been awarded for their Vaccine Program work. *See, e.g.*, *Lott v. Sec'y of Health & Hum. Servs.*, No. 18-95V, 2020 WL 4725520, at *2 (Fed. Cl. Spec. Mstr. June 24, 2020). I therefore find them reasonable and award them herein.

### B. Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.,* No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.,* No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch,* 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Petitioner requests $26,080.00 in attorneys' fees for her counsel. Aff. ¶ 12. Upon review of the submitted billing records, I find the time billed largely reasonable. The invoice entries are sufficiently detailed for an assessment to be made of the entries' reasonableness. However, a small reduction is necessary due to some billing for administrative tasks. For instance, Petitioner's counsel billed for Bates-stamping documents, receiving CM/ECF notifications, updating Petitioner's contact information, and scheduling phone calls. *See* Pet'r's Ex. 2 at 2–10. Upon

---

[8] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*. *See* 2015 WL 5634323.

review, a reasonable reduction for these issues is $300.00. Petitioner is therefore awarded final attorneys' fees of **$25,780.00.**

### C. Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $4,618.74 in attorneys' costs. *See* Aff. ¶ 12. This is comprised of $1,408.74 for acquiring medical records, Petitioner's Court filing fee, and mailing and copying expenses. *Id.*; Pet'r's Ex. 2 at 12. It also includes $3,210.00 in expert fees for the work of Dr. Tallarico. Aff. ¶ 12. Petitioner has provided adequate documentation of these expenses, and they appear reasonable for the work performed in this case. *See* Pet'r's Ex. 2 at 12–46; Pet'r's Ex. 5 at 1–3, ECF No. 36-6. Accordingly, Petitioner is entitled to final attorneys' costs in the amount of **$4,618.74.**

## VI. Conclusion

Petitioner's motion is hereby **GRANTED**. In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e), I have reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than the reductions delineated above, is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

| Attorneys' Fees Requested | $26,080.00 |
|---|---|
| (Reduction to Fees) | - ($300.00) |
| **Total Attorneys' Fees Awarded** | **$25,780.00** |
|  |  |
| Attorneys' Costs Requested | $4,618.74 |
| (Reduction of Costs) | - ($0.00) |
| **Total Attorneys' Costs Awarded** | **$4,618.74** |
|  |  |
| **Total Attorneys' Fees and Costs** | **$30,398.74** |

Accordingly, the undersigned awards a lump sum in the amount of **$30,398.74** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Brian Cinelli, for final attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[9]

**IT IS SO ORDERED.**

                                                             s/Herbrina D. Sanders
                                                             Herbrina D. Sanders
                                                             Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.